*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CARTER, Minors.

UNPUBLISHED
April 21, 2022

No. 358596
Calhoun Circuit Court
Family Division
LC No. 2017-002918-NA

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating his parental rights to his children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In 2017, petitioner, the Department of Health and Human Services, filed a petition seeking to remove four children from the care of respondent. The petition alleged that respondent and the children's mother[1] were unable to provide proper care and custody of the children given their housing instability, substance abuse including marijuana and cocaine, and lack of appropriate parenting skills. Respondent admitted to the allegations in the petition, including that he used marijuana and Vicodin without a prescription, that the children's mother tested positive for cocaine and opiates when she was in labor with one of the children, and that one of the children tested positive for morphine, cocaine, and hydrocodone when she was born. Subsequently, after ascertaining that respondent did not have Native American heritage, the trial court took jurisdiction over the children. Respondent was provided with services to help him rectify his barriers to reunification, including parenting classes, psychological assessments, therapy sessions, housing programs, substance abuse therapy, and parenting-time visits. A fifth child was born during the pendency of the case and, as the conditions leading to the adjudication of the older four children continued to exist despite the provision of services, petitioner filed a petition seeking to remove

---

[1] The children's mother voluntarily released her parental rights, and she is not a party to this appeal.

-1-

the infant from respondent's care. Respondent pleaded to the allegations in the petition concerning the fifth child, and the court took jurisdiction.

Services continued to be provided. However, even though respondent attended a majority of the parenting-time visits that were offered and he completed his parenting classes, he did not consistently attend the other services that were offered and he did not benefit from the services that he did complete. Consequently, following a termination hearing, respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## II.  BEST INTERESTS

### A.  STANDARD OF REVIEW

Respondent argues that the trial court erred by finding that it was in the children's best interests to terminate his parental rights.[2]  "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

### B.  ANALYSIS

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). With respect to the children's best interests, this Court places its focus on the children rather than the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

Respondent argues that the court's best-interests finding was clearly erroneous because, although respondent is a drug addict, "so is a significant percentage of the American population." His drug addiction, however, is relevant to the best-interests determination because it affects his ability to parent his children and to provide them with stability and consistency. Although he was provided with several services aimed at rectifying his substance-abuse issues, he was unable to overcome his drug addiction. Respondent continued to test positive for marijuana and cocaine

_____

[2] Respondent has not challenged the trial court's finding that statutory grounds for termination of his parental rights were established by clear and convincing evidence.

throughout the pendency of this case. The record reflects that of 91 scheduled drug screens, respondent tested negative for any substance four times, tested positive for cocaine, marijuana, and opiates 34 times, and missed 53 tests. It was also reported that he did not understand the impact his substance abuse had on his ability to appropriately parent the children. Although respondent attended a few therapy sessions near the beginning of the case, he later stopped participating in therapy.

Respondent also contends that removing the children to foster homes that have "more economic advantages for the children" is not in the children's best interests. Yet, respondent's argument ignores that the children were not removed from his care because of a difference in economic advantages between his home and the foster homes. Instead, as he admitted when pleading to the allegations in the petitions, the catalyst for the removal was his inability to provide proper care to the children. Moreover, the reason that they were not reunified with him was, again, not because of any economic disparity, but, rather, he simply failed to rectify the conditions that led to the adjudication. As it relates to economic issues, respondent failed to acquire appropriate housing for the children. Instead, he refused to allow access to his home so that it could be evaluated. And although respondent reported to his caseworker that he had sufficient income to support the children, he never submitted any pay stubs or verification of his income. Instead, the testimony suggested that he requested to be paid "under the table" so that he could avoid paying child support. Despite his inability to show that he could support his children, his positive drug screens indicate that he was able to prioritize purchasing drugs over reunification with his children. In sum, contrary to respondent's argument on appeal, this is not a case about a poor parent being deprived of his constitutional right to parent his children simply because he has less economic advantages than a more affluent foster family.

Respondent's lack of progress toward reunification meant that, for over two years, the children were in foster care. The court stressed that the children "had been hanging in the balance since 2017," and that they needed permanence and stability that respondent was unable to provide. During that time, respondent maintained a limited bond with the older children, but the younger children were removed shortly after their births and had only ever known the foster parents as their parents. Moreover, as noted by the trial court, the older children also needed a routine, which they were receiving from their foster families. Indeed, the children were thriving in their placements by doing well at school or otherwise hitting their developmental milestones. Each child was reported to have structure, stability, and permanence with their foster families. In contrast, respondent refused to let caseworkers inspect his residence to see if it was appropriate for children, refused to provide paystubs to indicate that he could support five children, and otherwise demonstrated that he did not have the capacity to provide proper physical, mental, and emotional care for himself, let alone five children. Given the evidence presented in this case, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Brock A. Swartzle